Wardlaw, J.
dissenting. Must this will of real and personal property, which is offered for proof in solemn *555 form, although unexceptionable in all other respects, be necessarily rejected, as insufficient, under our Act of 1824, to dispose of the personal property, because one of the three subscribing witnesses is nominated as an executor?
I state the question in this form, because I regard all the acts of Williamson, (the attesting executor) subsequent to the attestation, and his death, as wholly immaterial. If the will was good, he cannot have destroyed it. If he has received what the law did not authorize him to take, other persons shall not thereby be prejudiced. We must have reference to the moment immediately succeeding the attestation, and decide the question as if the testator had then died, and the will had been instantly presented for probate.
If an executor's right to commissions be not a beneficial interest given .to him by the will, then, in my opinion, this will would be good without reference to the statute 25 Geo. 2, c. 6, but in the view which I have taken, it is material to shew that that statute is of force here.
It was of force by the efficacy of its terms, extending, as they did, its provisions to certain Colonies, of which this was one. If common law and history did not make this plain, the first (a) and second (b) sections of our Act of 1712, and the proviso (c) to the sixth section of the Act of 1737, surely do. The incidental reference to this statute as an existing law, which is made by an Act of 1759, (d) shows, more clearly than any formal confirmation of it could have done, the acknowledgement then made of its inherent vigor, and supplies, for those who think it necessary, a recognition by the Provincial Legislature.
Has it been repealed? It has been said that it was an amendment of the fifth section of the statute of frauds, and that a re-enactment of that section, without the amendment, which the second section of our executors's Act of 1789 (e) contains, was a repeal of the amendment.
Repeals, by implication, are never favored. Those who adopt the law of Anstey vs. Dowsing, (f) as it has been explained and enforced by Lord Camden, (g) should hesi *556 tate long before they go beyond the plain sense of our Act, to establish the repeal of a statute designed to prevent the mischiefs of that law. But waiving all considerations which may be supposed to have influenced the legislators of 1789, let us now confine our view strictly to what they have done.
The Act of 1789 is a general summary of statutory regulations concerning executors and administrators, necessarily requiring for its understanding an examination of previous enactments; and I think that all previous enactments were left of force, which were not either expressly repealed or contradicted by necessary repugnancy. To shew that previous enactments concerning wills, executors, administrators and ordinaries, were left out of this summary, and yet remained unrepealed, I will give two instances, selected from many that might be presented, because they have some connexion with the subject in hand.
First. In 1734, (h) (on account, no doubt, of some application of the civil law rules respecting the competency of persons to prove a will, having been made to the term “ witnesses,” used in the nineteenth section of the statute of frauds, which relates to nuncupative wills) it was here enacted, “that all witnesses which are good witnesses at trials at common law, shall be good witnesses to prove a nuncupative or verbal will, made of goods and chattels agreeably to the statute of frauds.” The fourth section of the Act of 1789 re-enacted, with slight variations, the nineteenth section of the statute of frauds, respecting the terms “three witnesses,” but it has never been considered that thereby the above amendment or exposition made by the Act of 1734 was repealed, and the civil law rule as to the competency of the witnesses restored.
Second. An Act of our Legislature, in 1745, (k) gave commissions to executors, administrators, guardians and trustees; in one (l) section fixing the rate, in another providing a mode of obtaining extra compensation for unusual trouble, and in a third, directing how the commis *557 sions shall be divided between several. The Act of 1789 repeated the first and third of these sections, as to executors and administrators, and omitted the second; yet it was never held, either that guardians and trustees were excluded from commissions, or that executors or administrators were prevented from resorting to the'former mode of obtaining extra compensation.
The statute of 25 Geo. 2, passed to quiet the alarm created by the opinions expressed by Ch. J. Lee, in Anstey vs. Dowsing, in eifect. placed every subscribing witness of a will containing devises, to whom any beneficial interest was given by the will, upon the same footing as before the statute had been a witness to whom a void devise had been'made; and thus settled what should be the future meaning of credible, as applied to witnesses in the fifth section of the statute of frauds.
When the Legislature, in 1789, used the term credible, it must, therefore, have used it in reference to the law then existing ; that is, as signifying one who was either competent before the statute of Geo. 2, or whose competency was established by force of that statute. Can it be supposed that the Legislature intended that all the devises of a will should be void, because a trifling legacy was given to a witness, who may have subscribed without knowing that he was a legatee, and even without the testator’s knowing that he was a witness 1 (m) Or else, that the intention was to refer the competency of the witnesses to the time of examination, and not to the time of attestation, so as to make the validity of the will depend upon circumstances which no caution could control, or to preserve which, great temptations to fraud and perjury would be held out? Neither of these suppositions seems to me so probable, that it should be sustained by implying the repeal of a statute, as to which the Legislature has been silent, and which is entirely consistent with the subsequent enactments.
The decisions made in this State, which have been reported, are, perhaps, not absolutely conclusive in favor *558 of this statute of Geo. 2 being of force. Richardson vs. Richardson (n) contains a strong opinion, but the case turned upon other points. Lowndes vs. Lowndes (o) seems, without much examination, to have been rested upon the opinion in Richardson vs. Richardson.
In Dickson vs. Bates (p) the plaintiffs probably preferred a nonsuit to the forfeiture of the legacies, which the witnesses took. Besides recognizing the dangerous doctrine that a rele~tse will establish the competency of a witness to attest, the court seems to have held that if one witness had been made competent to prove, the incompetency of the others to attest, might have been disregarded.
A case in 1794, (q) (although opposed to Hatfield vs. Thorpe, hereafter mentioned, with respect to the efficacy of a release from the husband of the devisee) recognized the statute as then of force. So, also, the statute is recognized in Snelgrove vs. Snelgrove, (r) 1812, but it could not there be of any use to the devisee witness, who was urging the will.
Judge Grimke, in his Public Laws, omitted the statute of 25 Geo. 2, probably because he did not observe its recognition in the Act of 1759, which, also, he omitted. His Law of Executors, in which he subsequently inserted this statute, (without still, as it appears, having discovered its recognition) shews plainly, in various passages, (s) that he did not, for a moment, conceive that it had been repealed by the Act of 1789. It would be difficult to point out any difference in the reasons for declaring them severally to he of force, between this statute of 25 Geo. 2, and the statute 5 Geo. 2, ch. 7, (t) which latter is inserted in the Public Laws, because it was individually referred to in our insolvent debtors's Act of 1759. (u) Both were, by their terms, extended to the Oolonies ; both were recognized by the Provincial Legislature, not as needing sanction, but as prevailing of course; both are of the class of statutes which Parliament was acknowledged to have the power of passing, even when, long after their passage, the power of Parliament *559 in matters of taxation and revenue was denied; and both were saved by our constitutions of 1776 and 1778, from repeal by the revolution.
The omission of the statute of 25 Geo. in the Public Laws, (the only published compilation of statute law which was made in our State before 1814) no doubt kept it out of sight on many occasions where it might have applied ; but I think is plainly insufficient to shew that it never was of force here, and certainly could not avail to work its repeal.
Assuming, then, that the statute 25 Geo. 2 is of force here — I argue,
1. That in a suit between heir and devisee, a devise would be good without the aid of this statute, notwithstanding one of three witness was named, and even acted, as executor, if, by the will, no beneficial interest or estate was given to him.
2. That to this condition of executor without beneficial interest or estate — mere trustee — every executor who has attested a mixed will, is reduced by this statute, all benefit given to him by the will having been destroyed at the instant of attestation.
8. That such trustee is a credible witness under our Act of 1824, to a mixed will certainly, if not to one of mere personalty.
4. And that all considerations shewing that such executor cannot prove the will in a court of probates, without renunciation, fall short of shewing that he cannot attest, as they are founded upon reasons presumed to arise after the death of the testator, but not existing at the time of attestation.
In these views, I shall not neglect the important distinctions subsisting between devises and wills of personalty, and between suits inter 'partes, and a testamentary cause like this, which is in the nature of a proceeding in rem; but I cannot exhibit the force of these distinctions, or state the grounds of my conclusion, without reasoning from points that have been settled in cases that differ from this, to the decision which should be here made of similar points, as they shall be found to depend upon the same *560 principles, or to be controlled by a difference of circumstances.
1. As the rules of evidence are settled, now that the distinction between an interest in the question, and an interest in the event, of a suit is familiar, and that objections in cases of doubt are held to go rather to credit than to competency, we may say that there is, at common law, nothing which forbids a witness from proving, in a case inter alios, an instrument under which he himself claims a benefit. But it was not until Lord Mansfield’s time, (v) that the present liberality in the admission of witnesses was established, and as we go back into the'times preceding, the more numerous and indefinite we find the grounds of exclusion.
Before the statute of frauds, the civil law, as it was administered in the Ecclesiastical Courts, would not admit any person who took an interest under the will, before release or satisfaction, or even the children of legatees, (w) to prove a will; and the common law courts, either guided by the rule of the Ecclesiastical Courts, or in their jealousy of the bias which similarity of condition produces, misapprehending the nature of the interest which should prevent a witness from being heard, would not, in a contest between heir and devisee, hear the testimony of another devisee, or even of an unsatisfied legatee, in favor of the will. A mere trustee, however, was heard, and of this character an executor without beneficial interest was held to be. (x)
After the statute of frauds, the rules which before had regulated the admissability of witnesses to prove a will in trials at law, were applied in determining the sufficiency of the witnesses who attested a devise. (y) And the case of Anstey vs. Dowsing, (z) in 1746, recognizing the rule before laid down, that all who took any interest under a will, did not fall within the description of credible witnesses required by the statute, carried the rule to its true *561 and alarming consequences, by maintaining that no subsequent release, or payment, or other removal of the interest, would make good an attestation, which before was bad.
The statute 25 Geo. 2, c. 6, followed in 1752. This statute assumed, that by the statute of frauds every person who took a benefit under a will, was incompetent to attest it; and removed the incompetency by destroying the interest, except in the cases inadvertently omitted, of an interest in the husband or wife of a witness.
In the case of Wyndham vs. Chetwynd, (a) in 1757, (involving the validity of a devise made before the statute of Geo. 2,) Lord Mansfield was of opinion that the witnesses, under the particular circumstances of that case, took no benefit under the will; but desirous to save devises from the consequences of what he considered the harsh application of an erroneous rule, he went into an examination of the previous cases. He held that the fifth section of the statute of frauds, in effect, provided that every devise should be attested by three witnesses, who, if called on at the time of attestation to prove it, would have ability to do so ; that the devisee, whose devise might be under consideration, would not have such ability, and no release or subsequent act could give it to him for his own benefit; but that every other devisee, and every legatee (if subject to no disability besides the imputation of interest) might prove the devise in question, as a matter inter alios, even without release; or if the suspicion of bias should be held to exclude him, that that suspicion would be removed by a removal of his interest under the will.
Eight years afterwards, Lord Camden, then Ch. J, Pratt, in the case of Hindson vs. Kersey, (b) which likewise involved the validity of a devise made before the statute 25 Geo. 2, where the interest imputed to one of the witnesses was extremely minute, and perhaps uncertain, assailed the doctrines of Lord Mansfield, with an ability which has extorted praise, if not assent, from all who have commented upon his opinion: It has been sometimes said that Lord Camden maintained, in opposition to Lord Mans *562 field that credible meant competent, and that the competency should be referred to the time of attestation and not to the time of examination. But it is a mistake to extend the difference of opinion between these great men to either of these particulars. Lord Mansfield had held that competent was included in the terms credible witness, as it would have been in that of witness only, and that the witness must be one who at the time of attestation would have been competent to prove the devise in question,— finding fault, however, with the rule which held all to be incompetent who took any benefit under the will. Lord Camden went much further. He regarded the term credible as important, and considered it to mean not only competent, but much more, that is, free from bias, not subject to the temptation to commit a fraud, or to sustain one by perjury, which might spring from an interest to be taken under the same instrument which contained the devise. He shewed the danger, as well as what he conceived to be the absurdity, of holding that an incompetency to attest, arising from the bias occasioned by an interest created then, could be purged by a subsequent removal of that interest. But there seems to have been in his mind no idea of a disqualifying bias arising from any thing but a beneficial interest in the will, such an interest as had been held in former cases to render a witness inadmissible to prove a will.
The opinion of Lord Camden, as to the inefficacy of a release or other subsequent removal of the bias, was not sustained by the court in which he presided, and the opinion of Lord Mansfield upon that point coincides (c) with all the previous cases except Anstey vs. Dowsing, and it is yet uncontradicted by any decision in England, — although it may be observed that there the statute 25 Geo. 2 has prevented all occasion for its application, except in cases where a husband or wife of a witness took an interest under the will.
In Fowler vs. Welford, (d) 1779, Lord Mansfield yield *563 ing, probably, to the declaratory authority of the statute 25 Geo. 2 his opinion that by the statute of frauds the de-visee in question only was disabled for interest, declared that an executor who took under a will a reversionery interest in copy-hold, but did not attest it, would not, in ejectment between the heir and another devisee, have been competent to prove the sanity of the testator, before surrender of his interest. And this was in conformity with what had been, in 1761, done in Lowe vs. Jolliffe (e.) Both these cases, it will be seen, held that an executor without beneficial interest was admissible as a witness in favor of the will, between heir and devisee, although a legatee unsatisfied would not have been admitted. In neither of them was the executor a subscribing witness.
A case in the King’s bench, 1826, Wood vs. Teage (f) decided that an executor who took a beneficial interest under a will, as debtor of the testator, and did not subscribe it, but in ejectment between the heir and devisee was offered to prove the testator’s sanity, was admissible. It was conceded that the statute 25 Geo. 2 would have cut off his right to extinguish his debt, had the executor been a subscribing witness. But it was said that he was admissible, because as to him and any proceeding concerning the personalty, the suit before the court would be res inter alios acta. The reason here given would, before the statute of frauds, have shewn every legatee and every other devisee to be competent between the heir and devisee; and without any rélease or any inquiry into the nature of his interest, would have shewn the executor to have been admissible in Lowe vs. Jolliffe, and in Foster vs. Welford. This case may then be said to have repudiated, in conformity with more enlightened views of the rules of evidence introduced by modern decisions, the old rule that no person could in any cause prove a will under which he claimed a benefit, and so is consistent with Lord Mansfield’s first opinion, but contrary to the law which Ch. J. Lee and Lord Camden, as well as the framers of the statute 25 Geo. 2, assumed to prevail, and which the cases already *564 cited acknowledged when they distinguished an executor without beneficial interest from persons held to be interested. The case, however, does not touch the competency of subscribing witnesses. Although the statute 25 Geo. 2, and even the statute of frauds itself, may have been framed with reference to a rule assumed to prevail, those statutes, and the decisions under them, remain untouched by a repudiation of the rule in cases not embraced by them. It must however be perceived that if credible moans competent only, there could, upon the principle established by this case of Wood vs. Teage, have been no reason for holding incompetent to prove the devises in question, the legatees whose interests were considered in Anstey vs. Dowsing, Wyndham vs. Chetwynd, and Hindson vs. Kersey.
In Hatfield vs. Thorpe, (g) K. B. 1822, a subscribing witness was husband of the devisee of the lands in question. The interest was direct in the event of the suit, and no release could make the devise to his wife good, any more than it could have aided one to the witness himself.
Bettison vs. Brunley (h) was an issue between the heir and devisees. There the wife of an executor was a subscribing witness, and the statute 25 Geo. 2 therefore did not apply. The full force of the term credible, as settled in Anstey vs. Dowsing, was recognized, yet the wife was held to be a good attesting witness, because no beneficial interest was given to the executor by the will. If it should be supposed that this case may rest upon the doctrine res inter alios, which we have seen was subsequently applied for the admission of an executor with a beneficial interest who was not a subscribing witness, that supposition cannot be made as to Phipps vs. Pitcher, (i) a case decided in the Common Pleas, 1815. There the devise in question was of a power to sell, without beneficial interest, to the executors, one of whom was a subscribing witness. It was held that they could make a good title — the sufficiency of the attestation resting solely upon the ground that *565 the executor, witness and devisee, took no beneficial interest, but was a mere trustee.
I take it' then to be settled, that if no beneficial interest be given to the executor by the will, or if any which would otherwise have been given, be taken away by the statute 25 Geo. 2 at the instant of attestation, the executor may be a witness to attest the devises. Indeed it seemed to be admitted by the counsel for the appellant in the case before us, that the attestation would be good as to the devises — the attesting executor deriving from the will no beneficial interest besides his commissions, and the right to commissions being either an interest not given by the will, or an interest void undei the statute 25 Geo. 2.
2. With regard to the effect of the statute 25 Geo. 2 upon this case, I agree that the term “appointment,” (k) used in the statute, signifies the exercise of a power, and does not embrace the nomination of an executor; and further, that such an executor as in England would be a mere trustee without beneficial interest, does, under our Acts allowing to him commissions, take a valuable right. This right I conceive to be an interest given to him by the will. It is not expressed in the will, but in that it resembles the right to the surplus and the right to have his debt to the testator extinguished, both of which at common law passed tó the executor, if not denied by the will. Like those, I think this might be denied by the will, and the executor accepting the trust would in such case be bound by the condition imposed. (l) This incident of office depends upon statute, those upon common law. This is enjoyed whether there be debts or not, and so far is more beneficial than either of the others. This would be valueless if "the whole property was real estate or was under execution — so in either of those cases would both the others be. This is said not to be given by the will, because it is a compensation for services rendered, and is lost if the services be not rendered in' the manner prescribed by law; the others, too, attach only after the office has *566 been, assumed, and assumption of the office compels the performance of its duties. This right is like the salary or perquisites of a public office of profit, measured, or supposed to be measured, by the nature and extent of the duties performed. Every office of profit, not a sinecure, is only an employment by which wages for labor may be gained. If a public officer resigns, the profits of office pass to his successor; the public has not gained, but it does not follow that he has not lost. So if a sole executor should renounce, the same commissions he would have received will pass to an administrator with the will annexed — the estate would not thereby gain, but he would lose ; the interest which without renunciation he would have taken, is what affected his competency as a witness, and as to that it is immaterial to him who may enjoy it after his renunciation.
Upon the right to commissions, I think the statute 25 Geo. 2 operates here, (as it seems to be conceded it does in England upon the other two incidental rights of execu-torship which I have mentioned,) leaving the executor to whom no other beneficial interest is given by the will, a mere trustee. The office of executor itself I think the statute does not take away, because of itself it is in law considered to be a burthen and not a benefit, and it may well subsist without any beneficial incidents. Stripped by the statute of every beneficial interest under the will, either expressed or implied, the executor attesting the will becomes like a person nominated by the will to perform some special service for the estate, as to advise, to arbitrate, or to make partition. His powers are general and large — his temptations greater, but his interest in law is the same.
3. It is objected, however, that the statute 25 Geo. 2 relates only to devises which have been attested in conformity with the statute of frauds ; whereas, the case before us involves the sufficiency of an attestation made under our Act of 1824, (m) which first required attesting witnesses to “ all wills or testaments of personal property,” and required “ three or more credible witnesses,” without any reference to the statute which had been enacted to save devises from *567 being made void by the attestation of incompetent witnesses.
Our legislature enacted, as- to the execution of wills of personalty, the very same terms which the statute of frauds had applied to devises; and .as to their revocation, made express reference to real estate for the forms which should avail. It seems plain that the intention was to put both kinds of property upon the same footing, in respect to the formalities of testamentary disposition; and the propriety of establishing uniformity and simplicity in relation to wills, is so manifest, that any construction is much to be regretted that shall make the same will good as to one kind of property and bad as to the other. The wishes of a testator are likely to be thus more completely frustrated, than they would be by rendering the whole will void. Such a construction is, moreover, subject to much doubt, when it shall, under the same words enacted for both kinds of property, reject, as to the personalty, what is held good as to the realty ; although the design of the legislature, at most, could have been only to require for the former the solemnities which the community had long been accustomed to for the latter.
If, however, the statute of frauds as to devises was amended, long before our Act, by a statute which is confined to devises, the repetition, in our Act concerning wills of personalty, of the words of the statute of frauds, would not, without extrinsic aid, extend the amendment also to wills of personalty. Concerning the Act of 1789, we have seen that the question was one of repeal by implication— the question here, is one of enactment by implication.
In the case of a will of mere personalty, there might, then, be great difficulty in shewing how the statute 25 Geo. 2, (if it relates only to wills that concern devises,) could restore the competency of a witness to a will that contains no devise ; who, independent of that statute, would not be considered such credible witness .as is required by the Act of 1824. The difficulty would be avoided by maintaining the position that the stat. 25 Geo. 2, although confined by its title, preamble and 10th section, to wills containing devises, does yet, by its enacting clause, comprehend all *568 wills ; and that our legislature must, in 1824, have understood it to be thus comprehensive. This position receives strength from the observation, that the case of Lees vs. Summersgill, (n) in which Sir Wm. Grant held the statute to comprehend wills of mere personalty, was decided in 1811; while the cases (o) overruling that decision, have all occurred since our Act of 1824. Adopting, however, the exposition of the statute given by the later English cases, the difficulty would be overcome if it could be made to appear that all our statute law in relation to the execution of wills, is to be construed in pari materia ; and that the legislature, by carefully adopting for wills of personalty the same terms which had been used as to devises, intended to adopt the meaning which had been affixed to those terms — and so extend to the new subject the statute which had before ascertained the meaning of the terms as applied to the old one.
But however this question might be decided as to a will of personalty only, it is sufficient in the case before us, to say that the will under consideration is not a will of mere personalty, and the difficulty which has been suggested, does not here arise. This is a mixed will, containing many valuable devises; and there never was a doubt that to such a will the statute of Geo. 2 extended, as is manifest from its terms, “ legacy,” and “ of or affecting any real or personal estate.” The legacy, interest or estate, once made void, is as if it had never been given. It is void ah ini-tio — and- no less void in an Ecclesiastical Court than in a court of Common Law. The case before us is, then, just as if the statute 25 Geo. 2 had formed part of the Act oí 1824. At the moment after attestation, all beneficial interest or estate given to the witness was made void, to save the devises, and the witness was thus left free from the objection of interest, a credible witness as to the personalty.
4. What I conceive to be the strongest objection to my views remains, however, to be considered. It is, that independent of all considerations of beneficial interest, an ex *569 ecutor cannot be competent, by his own attestation, to give validity to the instrument from which his powers are to be derived.
I assent fully to much that has been said on this head. This is not an ejectment between heir and devisee, nor an issue devisavit vel non-which name has frequently, in our reports, been applied to cases like this, but improperly-but it is an appeal froni the Ordinary; a truly testamentary cause, in which the question is whether the testament has been proved, that is, whether the formal authority for its execution shall be given by the proper tribunal, in the grant of probate to an executor, or in the grant of administration with the will annexed, to the person entitled thereto. In such a cause, all persons having any interest are in some sort parties, for every body is.bouiid by the result, until it be reversed; and the result is conclusive upon all who are belore the court, or have notice, and Their privies, if the will be once proved, it is, against the persons bound by the proceedings, proved for an executor who is absent, as well for one who is before the court-for a legatee oi~ creditor, as well as for an executor. (p)
Devises, on the other hand, are not established by probate. If a will contain no appointment of an executor, and no bequest of chattels, but only devises of lands, it need not be proved in the Ecclesiastical courts of England at all. (q) If it ought to be brought to the view of the Ordinary here, it is only because lands are here sub modo assets, and our legislation has reference to devises in directing the course of proceeding before the Ordinary. (r) It is true here, however, as in England, that there is, as to devises, no ~irobate of the whole ~vill~ but every several de-visee must make out his title in a distinct cause and do novo against every new party. (s)
The great purpose of a testament, is to appoint an ëx-ecutor-for the executor is, at common law, residuary legatee, or, as he has been sometiu~es called, universal legatee. (t) Even without probate, he can exercise most of *570 bis powers ; and by acts of intermeddling, he may, before the will has been propounded, place himself in such condition that he will not be permitted to renounce. Even if he should be desirous of renouncing, and have not inter-meddled, he is not permitted to do so, except by solemn act in court; and after the most solemn renunciation, he may, at the death of a co-executor, retract his renunciation and claim grant of authority to exercise his office, (u)
These general propositions shew that it is an error to suppose this case is decided simply by the authorities which shew that an executor without beneficial interest may be a witness to prove a will between heir and devisee, and that by his own attestation he may sustain the devise of a naked power to himself. This error seems to pervade the otherwise instructive' case of Sears vs. Dillingham, (v) which, — -if no commissions were there allowed to the executor, or if all his beneficial interest had been destroyed — -seems to me correct in holding that in a court of probates he might be competent to attest, but not to prove ; but wrong in resting the decision solely upon the cases relating to devises.
In support of the objection now under consideration, it is further to be observed, that the common law rule, which admits an executor without beneficial interest, like an ordinary trustee, to testify inter alios concerning the estate, has not been adopted in equity, (w) but there such executor is distinguished from other trustees, upon the ground that he is liable for devastavits, and so has an interest to increase or discharge the estate.
In the Ecclesiastical Court, too, a person nominated as executor has never been admitted to testify in support of a will without renunciation; (x) although, after renunciation, his testimony has been received for the benefit of the legatees, and then, by consent of all parties, he has been permitted to retract his renunciation, for the benefit of the estate, (y)
The answer to the objection thus fully stated, satisfies *571 my judgment. The decisions as to the admissibility of an executor trustee in equity, have regarded him as already in office, subject to liabilities which have accrued since the testator’s death. The practice in the Ecclesiastical Courts is founded upon the reasons that an executor, if a party belore the court, is liable for costs; if not before the court, is yet liable to be affected by the result; and the question of his admissibility always arising after the death of the testator, the court cannot know whether he has a beneficial interest, or whether he has intermeddled, unless he will give the usual and best evidence of his renunciation. (z) But all these decisions, and all the reasons they rest on, it will be seen, do not touch the question of attestation, and of competency to be referred to that instant. Then there could have been no liability for devastavits; — then no in-termeddling, — then no benefit not taken away by the stat. 25 Geo. 2. At that instant, a person named as an executor was as free from all legal notion of bias, as he could be made afterwards by renunciation. At any time afterwards, especially at any time after the death of the testator, the executor, as a person either in form or substance a party, or as a person presumed to have an interest from his acts done, or liabilities incurred, since the testator’s death, may not prove the will — but it does not follow that he could not have attested it; much less that its validity, like his admissibility, shall depend upon whether he will renounce or not.
The executor has, at common law, large powers. He is legal owner of the whole personalty, with almost unlimited powers of disposition over it. By our statutes, the right to the surplus, and the right to have his debt extinguished, (a) have been taken from him, and his power to sell or alien the chattels much modified. (b) But still his powers-are here large ; his responsibilities are great, and the pledges he gives are small, beyond his personal integrity. If he can by law take no benefit, he can by violation of his duties do much mischief. So can any agent to receive, and any trustee to whom the right of possession is corn- *572 mitted. But the opportunity to commit a fraud, the temptation to cheat, is no beneficial interest, which disqualifies an agent or trustee from being a witness where he is not a party.
The question now before us could neyer have arisen in the Ecclesiastical Courts of England, but it is worthy of notice that our practice in the Ordinary’s Court, and the appeal which is given thence to the Common Pleas, shew much less prevalence of the civil law rules here than there.in mere testamentary causes. It has not been thought with us that we should go beyond the ordinary rules of common law evidence, in deciding upon the admissibility of witnesses in these appeals from the Ordinary. Our Legislature intended to refer us, for the meaning of credible in our Act of 1824, not to the rules which might prevail in the Ecclesiastical Courts of England, but to common law and established practice. If then the common law be that an executor who has no beneficial interest is competent to testify inter alios in favor of the will, it follows that at the instant of attestation, and divested of all considerations that may have supervened, ■ such executor might have proved the will, and so is a credible attesting witness.
Reference has been made in argument to the late statute of 1 Victoria, c. 26, to shew that the 17th section contains a parliamentary exposition, from which it may be inferred that without that section an executor would not in England have been a good attesting witness to a will of personalty, after attestation was required to such wills. The doubts which had prevailed before Phipps vs. Pitcher, upon the question whether an executor, mere trustee, could attest a devise to himself, and the diversity of opinion and practice between the Courts of Law and Courts of Equity in respect to the admission of such executor in causes affecting the estate, may have given occasion for that section, in a well considered statute intended to settle the whole law on the subject. But it is apparent that that section was not intended to save a will which an executor had attested, or to make him competent to attest, but only to make him admissible as a witness in *573 a cause concerning the will, whether he had attested or not, when no objection lay. except his being executor — for the 14th section had already provided that no will should be vacated because a witness was, either at the time of attestation or subsequently, incompetent to prove its execution.
I conclude that there is nothing in our law which unavoidably requires us to say that this will has not been proved. .

 2 Stat. 402.

 2 Stat. 413.

 7 Stat. 191.

 4 Stat. 101.

 5 Stat. 106.

 2 Str. 1253.

 1 Day, 50, note.

 3 Stat. 382.

 3 Stat. 668.

 This section strangely omitted in the Statutes at Large, may be found in Grimke’s Law of Executors, page 24.

 The testator need not see the face of the attesting witness.

 Dud. Eq. 190.

 MS Charleston Eq. 1844.

 2 Bay, 488, 1802.

 1 Dess 425.

 4 Dess. 280.

 Pages 64, 71, 161.

 2 Stat. 570.

 4 Stat 90; P. L. 250.

 4 Burr. 2254.

 1 P. Wms. 11.

 Lord Hale, 1674; 1 Mod 107: 1 P. Wms. 288.

 Pyke vs. Crouch, 1 Lord Ray. 730; Holt, 1696; Hilliard vs. Jennings, 1699; Carth. 514; 1 Com. 90.

 2 Str. 1253, Ch. J. Lee.

 1 Burr. 414.

 1 Day, 41, note.

 1 Lord Ray. 730; 1 Ves. Sen. 503; Lord Hardwicke, 1750.

 1 Doug. 139.

) 1 W. Bla. 365.

 5 Barn, and Cres. 335.

 5 Barn, and Ald. 589.

 12 Ea. 250, Lord Ellenborough, 1810.

 6 Taunt. 220, 1 Mad. 87, S. C.

 Sug. on Powers ; see Linton and Blackburn vs. Law, 3 Add. 210, note.

 2 McCord’s Ch. 103, McCaw vs. Blewit.

 6 Stat. 238.

 17 Ves. 509.

 Brett vs. Brett, 1826, 3 Add. 210 ; Emanuel vs. Constable, 1827, 3 Russ. 436 ; Foster vs. Banbury, 1829, 3 Sim. 40.

 9 Co. 37.

 Cro. Car. 396.

 See 7th and 12th sections of Act 1789, 5 Stat. 106.

 1 Bur. 429.

 God. O. L. 3.

 Swinb. & Wms. on Ex’ors. passim

 12 Mass. 368.

 1 Ball & Beatty, 413, 3 Atk. 95, Ib. 604, 2 Atk. 229.

 1 Phil. 22, 3 Phil. 334, 577.

 3 Add. 272, 3 Hag. 212.

 3 Add. 61.

 Act of 1789.

 Act of 1824, 6 Stat. 238.